IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-03362-PAB

MARTIN IBARRA-AGUILLON,

Petitioner,

v.

WARDEN, Denver Contract Detention Facility,

Respondent.

---

**ORDER**

---

This matter comes before the Court on petitioner Martin Ibarra-Aguillon *pro se* amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("the petition"). Docket No. 4. Respondent filed a response. Docket No. 17.

## I. BACKGROUND[1]

Petitioner is a native and citizen of Mexico who has lived in the United States since approximately February 2008, after entering the United States without inspection. Docket No. 4 at 2-4.

On July 7, 2026, petitioner arrived at a checkpoint in Florida, where police and immigration officers were stopping vehicles and requesting identification and proof of United States citizenship. *Id.* at 2. Petitioner states he informed officers that he was

[1] The following facts are undisputed unless otherwise noted.

from Mexico and was not a United States citizen, after which he was immediately arrested, detained, and transferred to immigration custody. *Id*. That same day, the Department of Homeland Security ("DHS") issued a Form I-200, Warrant for Arrest. Docket No. 17-1. The warrant provides that probable cause existed to believe petitioner was removable from the United States based upon the execution of a charging document initiating removal proceedings, biometric confirmation and federal database records checks, and statements made by petitioner indicating he lacked immigration status. *Id.* The warrant further reflects that it was served on petitioner in Tampa, Florida, on July 7, 2026. *Id.* Respondent concedes that "[t]he present record does not establish whether issuance of the I-200 preceded the initial vehicle stop described in the Amended Petition." Docket No. 17 at 3 n. 1.

On August 1, 2026, DHS determined that petitioner would remain detained pending a final administrative determination in his immigration case. Docket No. 17-2. Petitioner did not request review of this custody determination by an immigration judge. *Id*. Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado. Docket No. 4 at 2.

On August 6, 2026, petitioner filed the petition, alleging that his arrest without probable cause or a warrant and subsequent detention violates the Fourth and Fifth Amendments. *Id.* at 2-3. For relief, petitioner asks the Court to order his immediate release from custody. *Id.* at 5.

In response to the petition, Respondent argues that the petition should be denied because petitioner's "claim about his arrest is beyond the Court's jurisdiction."

Docket No. 17 at 4. Respondent further contend that petitioner's present immigration detention is lawful regardless of the alleged illegality of the initial Florida stop. *Id.* at 8. Finally, respondent argues that petitioner was afforded the process available under 8 U.S.C. § 1226(a)—the opportunity for a bond hearing before an immigration judge, but petitioner declined to request it. *Id.* at 11.

## II. ANALYSIS

In *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1249 (10th Cir. 2026), the Tenth Circuit held that 8 U.S.C. § 1226(a) governs the detention of noncitizens undergoing removal proceedings who are detained in the interior of the United States. Petitioner is undergoing removal proceedings and was detained in the interior of the United States. Thus, his detention is governed by § 1226(a).

Section 1226(a) provides that, "*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[2] 8 U.S.C. § 1226(a) (emphasis added). As noted above, petitioner claims he was arrested without a warrant and therefore is entitled to release. Docket No. 1 at 6-7. Respondent primarily argues that petitioner's claim challenging his arrest is beyond this Court's jurisdiction. Docket No. 17 at 4-8.

This Court has previously held that 8 U.S.C. § 1252(b)(9) does not deprive the court of jurisdiction to consider a warrantless arrest claim that challenges a

[2] The type of warrant issued by immigration officers is known as Form I-200. *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (citing 8 C.F.R. §§ 236.1, 1236.1).

petitioner's detention rather than removal proceedings. *See Martinez-Salamanca v. Baltazar*, No. 26-cv-02410-PAB, 2026 WL 2083209 (D. Colo. July 20, 2026). Here, petitioner challenges his current detention resulting from his arrest without a warrant. Thus, the Court rejects respondent's argument and finds that it has jurisdiction to consider petitioner's claim.

Turning to the substance of the claim, petitioner alleges that "there was no warrant for [his] arrest" when he was stopped on July 7, 2026 at the checkpoint and where he was "immediately detained and turned over to ICE." Docket No. 4 at 2. Respondent provides a Form I-200 that was served on petitioner on July 7, 2026, Docket No. 17-1, but acknowledges that the "record does not establish whether issuance of the I-200 preceded the initial vehicle stop described in the Amended Petition." Docket No. 17 at 3 n.1. Based on the foregoing, the Court finds that Respondent has not shown that petitioner was served the Form I-200 prior to his arrest and detention. At least one court has held that respondents failed to show that an arrest warrant preceded a petitioner's arrest when it was dated the same date of the petitioner's arrest, but was served at an ICE detention center shortly after the petitioner was detained. *Juan J.M.E. v. Easterwood,* 2026 WL 1746672, at *3 (D. Minn. Jun 8, 2026), *report and recommendation adopted sub nom. Juan M.E. v. Easterwood,* 2026 WL 1747756 (D. Minn. June 17, 2026). Further, the court in *Ramirez Ovando v. Noem,* 810 F. Supp.3d 1209, 1226 (D. Colo. 2025), "rejected the notion that an I-200 warrant issued either *after* or *concurrent* with an arrest made without an assessment of individual flight risk transforms an unlawful warrantless

arrest into a lawful, warranted one." (citations omitted). Based on the record, the Court finds that petitioner was not arrested pursuant to a valid Form I-200 warrant at the checkpoint.

There are exceptions to § 1226(a)'s warrant requirement. Pursuant to § 1357(a)(2), immigration officials may arrest a noncitizen without a warrant:

> to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). Under § 1357(a)(5), an immigration officer may also make a warrantless arrest:

> (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or
>
> (B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony,
>
> if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(5). "Courts have recognized that these warrantless-arrest authorities are strictly limited, particularly in the interior-arrest context." *Morelos Valdovinos v. Noem*, 2026 WL 948285, at *5 (D.N.M. Apr. 8, 2026) (collecting cases).

Respondent does not provide any argument or set forth any evidence indicating that petitioner's warrantless arrest was proper under § 1357. Accordingly, the Court finds that respondent lacked statutory authority to arrest petitioner and that his detention is thus unlawful. *See Morelos Valdovinos*, 2026 WL 948285, at *6 (finding that respondents lacked authority for petitioner's arrest where "[n]othing in the record suggests that either statutory condition – reasonable belief of a violation or likelihood of escape – was met" and "the record contains no facts that would satisfy § 1357(a)(2) or (a)(5)'s narrow prerequisites for a warrantless arrest"); *Matovu v. Mullin*, 2026 WL 1387476, at *3 (W.D. Okla. May 18, 2026) (finding that respondents' warrantless arrest was unlawful where "Respondents introduced no evidence and, as such, failed to establish that they had reason to believe Petitioner was likely to escape before a warrant could be obtained for his arrest") (alteration, internal quotation, and citation omitted); *see also Quezada-Estrada v. Lyons,* No. 26-cv-01599-NYW, 2026 WL 1361880, at *4 (D. Colo. May 15, 2026) (citations omitted) (explaining that courts have interpreted "reason to believe" language as equivalent to the constitutional probable cause standard and requiring a particularized finding of probable cause that the noncitizen is likely to escape).

Where respondents have failed to obtain a warrant for a noncitizen detained under § 1226(a) and lacked statutory authority for a warrantless arrest, courts have found the appropriate remedy is to order the non-citizen's release. *See, e.g., Vo. v. Baltazar*, 26-cv-02626-NYW, 2026 WL 1998578, at *4 (D. Colo. July 10, 2026) ("the Court respectfully disagrees that a bond hearing is an appropriate remedy when a

petitioner is detained without the warrant required by § 1226(a)"); *Morelos Valdovinos*, 2026 WL 948285, at *7 (ordering petitioner's released based on "a growing body of decisions holding that when DHS detains a noncitizen under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the detention is unlawful from the outset and immediate release is required") (collecting cases); *Matovu*, 2026 WL 1387476, at *3; *Kunner v. Grant*, 2026 WL 1623016, at *4 (W.D. Okla. Apr. 22, 2026), *report and recommendation adopted sub nom.*, 2026 WL 1452463 (W.D. Okla. May 22, 2026).

"[W]hen DHS cannot meet the statute's requirements for a warrantless arrest, continued detention is unlawful and release is the only permissible remedy." *Morelos Valdovinos* 2026 WL 948285, at *7. Accordingly, the Court will order petitioner's release.

**III. CONCLUSION**

Therefore, it is

**ORDERED** that petitioner Martin Ibarra-Aguillon's *pro se* amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 4] is **GRANTED**. It is further

**ORDERED** that respondents shall release petitioner Martin Ibarra-Aguillon from custody within **48 hours** of the issuance of this order. It is further

**ORDERED** that the parties shall file a status report confirming that petitioner has been released from custody within **four days** of the issuance of this order.

DATED September 29, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge